629 A.2d 1371

STATE IN THE INTEREST OF J.S.

Superior Court of New Jersey
Chancery Division Family Part
Middlesex County

June 16, 1993.

*Antonio J. Toto,* Morris County Prosecutor, for the State.
*Thomas Abode,* Deputy Public Defender, for the Juvenile.

KRAVARIK, J.S.C.

The issue presented before this court was brought by the Public Defender by way of a motion to dismiss a criminal contempt complaint against a status offender involved in crisis intervention and appears to be a matter of first impression. This court must decide whether to allow the imposition of criminal sanctions which will, effectively elevate the juvenile to the status of a delinquent.

FACTUAL BACKGROUND

The factual circumstances of this case began when on May 19, 1992 a juvenile delinquency complaint was signed against J.S. for assault and improper behavior. The complaint went to Intake Services Conference and placed on abeyance for three months. A second complaint was also signed having the same disposition. Due to ongoing conflict within the home, a family crisis intervention petition was subsequently filed on June 17, 1992. The juvenile was released to her mother, and was ordered to attend individual and family counseling. The therapist recommended that the juvenile continue therapy, with her own individual therapist. Additionally, the recommendation stressed that as more individual issues were resolved, more conjoint sessions could take place with the mother. Five days later, the juvenile's grandmother was granted temporary custody. The mother was to undergo psychiatric and psychological evaluations within 90 days.

DYFYS was ordered to do a home evaluation. Temporary custody was then granted to the juvenile's uncle, and the juvenile was ordered not to run. On February 3, 1993, temporary custody was granted to the Pearlman family. There was to be joint

counseling with the juvenile's therapist. On February 23, 1993, the juvenile was released to the mother. A curfew was ordered for 8 p.m. Monday through Thursday, and 10 p.m. Friday through Saturday. On March 4, 1993 a supplemental order to the February 23 order was entered ordering the juvenile to attend school daily. The Highland Park Board of Education was ordered to do a child study team evaluation, and release the information to DYFYS. The court also ordered that if the juvenile were to violate any of the court orders, the mother was to notify the local police and the juvenile was to be arrested and detained.

On March 4, 1993, the juvenile allegedly violated her curfew. As a result, a complaint was signed charging the juvenile with violation of a court order contrary to *N.J.S.A.* 2C:29-9. A preliminary hearing was held the next day at which time the juvenile was remanded to detention, on furlough to the shelter on override awaiting the first available bed. The juvenile was ordered not to run and to obey the shelter rules. On March 16, 1993, the juvenile entered a not guilty plea and was remanded to the shelter on furlough status. On April 7, 1993 the juvenile was remanded back to the shelter, and the formal trial was adjourned without date since the Public Defender filed a notice of motion that day to dismiss the complaint arguing that *N.J.S.A.* 2A:4A-20 *et seq.* and 42 *U.S.C.* § 5601 *et seq.* bar delinquency prosecution of juveniles involved in family crisis situations, despite the juvenile's purposeful or knowing non-compliance with the Family Crisis Intervention Order. The State was granted time to reply to the motion and hearing was set down for motion day on April 30, 1993.

LEGAL ARGUMENTS

The Public Defender argues that statutory and judicial distinctions between a status offender and a juvenile delinquent preclude such a determination. In support of this, The Public Defender cites 42 *U.S.C.* § 5601, *et seq.*, the federal statute promulgating the Juvenile Justice and Delinquency Prevention Act, as well as *N.J.S.A.* 2A:4A-22 *et seq.* promulgated in New Jersey to reflect the federal law. Both statutes make distinctions between the

status offender and the delinquent, with the former being defined in New Jersey as "Juvenile Family Crisis." Specifically, *N.J.S.A.* 2A:4A–22(g) provides for the "well-being and physical safety of a juvenile," as opposed to societal protection as in the case of a juvenile delinquent.

The Public Defender also relies on *In the Interest of M.S.*, 73 *N.J.* 238, 374 *A.*2d 445 (1977). In *M.S.*, the juvenile was classified under the then existing Juvenile Act as a "juvenile in need of supervision," and placed in a shelter care facility, from which the juvenile left without permission. The trial judge ruled that the juvenile committed an act which would constitute escape if committed by an adult, in violation of *N.J.S.A.* 2A:104–6. The juvenile was therefore adjudicated a delinquent in keeping with *N.J.S.A.* 2A:4–44. On certification the New Jersey Supreme Court reversed, holding that the juvenile's conduct was not in the ". . . category of a criminal escape . . ." and was ". . . symptomatic of the very problem for which shelter care is being provided." *Supra* 73 *N.J.* at 244, 374 *A.*2d 445. The defense argues that the classification in *M.S.* is similar to the family crisis classification now in effect, and that criminal sanctions are not appropriate in that statutory law provides adequate enforcement procedures, in particular citing *N.J.S.A.* 2A:4A–86 which states:

"In the case of failure of any person to comply with any Orders entered pursuant to this section the Court may proceed against such person for the enforcement of litigant's rights."

Additionally the defense cites *N.J.S.A.* 2A:4A–76 note, which provides that the crisis procedure is one utilized to "deal with [those] juvenile matters which do not result in delinquent acts, but which are sufficiently serious to necessitate intervention," with dispositional tools available including fines and incarceration.

In opposition, the State argues that the juvenile should be charged with criminal contempt in violation of *N.J.S.A.* 2C:29–9 and adjudicated delinquent for her best interests as well as to preserve the dignity of the court. The State argues that *M.S.* does not apply since it was decided prior to the enactment of the Juvenile Justice Code which abolished the "juvenile in need of

supervision" classification. The State also argues that criminal contempt is the only appropriate remedy to obtain an "adequate program of supervision, care and rehabilitation" for the juvenile based on prior conduct in keeping with *N.J.S.A.* 2A:4A–21(e). This court agrees.

## THE BEST INTERESTS OF THE JUVENILE

"The juvenile court's commitment is to effect behavioral change by use of the services and facilities of the juvenile justice and other social service delivery systems." *See Family Court Manual,* Chapter 12, pp. 12–1. To that end, the juvenile court "actively seeks the best interests of the children who come before the court as well as their families." *Id.* at p. 12–2. *The New Jersey Code of Juvenile Justice, L.*1982, *c.* 77, § 1, eff. December 31, 1983 was promulgated to guide the juvenile courts toward an effective and positive resolution of juvenile matters. In support of this purpose, the Code provides that at least one of its purposes is:

"To insure that children under the jurisdiction of the court are wards of the State, subject to the discipline and entitled to the protection of the State, which may intervene to safeguard them from neglect or injury and to enforce the legal obligations due to them and **from them.**"

*N.J.S.A.* 2A:4A–21.

This court finds this language to be dispositive of the within matter. When the crisis order was entered the juvenile was advised that to purposely or knowingly disobey a judicial order if found guilty, was contempt of court and a crime of the fourth degree, punishable by up to one year in jail. The juvenile nevertheless chose to disobey this court's order and violate curfew. *N.J.S.A.* 2A:4A–23 in pertinent part provides:

"As used in this act, 'delinquency' means the commission of an act by a juvenile which if committed by an adult would constitute"

a. A crime;

b. A disorderly persons offense or petty disorderly persons offense; or

c. A violation of any other penal statute, ordinance, or regulation.

*N.J.S.A.* 2C:29–9(a) provides:

a. A person is guilty of a crime of the fourth degree if he purposely or knowingly disobeys a judicial order or hinders, obstructs or impedes the effectuation of a judicial order or the exercise of jurisdiction over any person, thing or controversy by a court, administrative body or investigative entity.

It is clear that the juvenile, by allegedly disregarding this court's order created a reasonable suspicion that she committed an act in violation of *N.J.S.A.* 2C:29–9(a), and as such may be adjudicated delinquent under *N.J.S.A.* 2A:4A–23 if the State meets its burden of proof beyond a reasonable doubt. It is also clear that *M.S.* can be distinguished from the within matter. In *M.S.* the New Jersey Supreme Court found that the juvenile's conduct did not constitute an act equivalent to "criminal escape" and therefore could not be adjudicated delinquent. Here the juvenile allegedly purposely or knowingly disobeyed the court ordered curfew in violation of *N.J.S.A.* 2C:29–9(a). The language of *N.J.S.A.* 2A:4A–21(e) is clear. Children under the jurisdiction of this court are "subject to the discipline and entitled to the protection of the State, which may intervene to safeguard them from neglect or injury and to enforce the legal obligations due to them and from them." At the request of Family Crisis Intervention, this court set a reasonable curfew for the juvenile to abide by. If the juvenile purposely or knowingly violated said curfew, with full knowledge of the consequences, J.S. committed a delinquent act, taking her out of the realm of a status offender. If a juvenile—or the parents/guardians and service agencies for that matter—can purposely or knowingly disregard Family Court orders without sanction and with impunity in family crisis situations, the legislation is a nullity, the court has no adequate remedy, the juvenile remains at risk and the family remains in crisis. Such a result is clearly not in the best interest of the juvenile or the legislative intent. It is therefore necessary to charge J.S. as delinquent in order to obtain what this court sees as an "adequate program of supervision, care and rehabilitation" for the best interests of the juvenile and in keeping with this court's obligation to uphold the Juvenile Justice Code.